J. D. HAVENS *et al.* v. C. F. DRAKE.

1. PARTITION — *Statute* — *Jurisdiction.* Where a petition for the partition of real estate was filed with the clerk of the district court of the proper county in vacation, while chapter 162, Comp. Laws of 1862, relating to partition, was in force, and the petition was followed up by the *notice* prescribed by the provisions of that chapter, *held,* that the court had jurisdiction of the subject-matter and of the parties to the action.

2. ———— *Defective Notice* — *Judgment, Not Void.* Under the provisions of § 3, chapter 162, Comp. Laws of 1862, the notice in a partition action was required to be at least "forty days previously to the term of the court next after the filing of the petition." Where the petition under the provisions of said chapter 162 was filed more than forty days previously to the term of the court rendering the judgment, and notice to answer was served more than forty days previously to the term of the court rendering the judgment, but only thirty-eight days were given in the notice in which to answer, and where the judgment was not rendered until more than forty days after the notice was served, *held,* that the judgment rendered upon the notice is not void. The defect, if any, is voidable only.

3. INFANT — *Notice* — *Valid Judgment.* Under § 3, chapter 162, Comp. Laws of 1862, relating to the partition of real estate, the personal notice to be given in an action for partition was required to be "in writing to each and every person concerned, their agent or attorney." Where service in such an action was made upon an infant, two years of age, whose father was dead, by delivering a certified copy of the written notice to the mother, having the charge and custody of the infant, in the presence of the infant, for said infant, and also by delivering a certified copy of the notice to the mother of the infant, as his natural guardian, and where this was followed

up by the appointment in the district court of a guardian *ad litem* for the infant, and where subsequently the regularly appointed and qualified guardian of the infant paid the infant's share of costs in the partition action, *held*, that the judgment rendered on such service upon the infant is valid and binding upon him and his grantee.

*Error from Bourbon District Court.*

On August 20, 1886, · *C. F. Drake* commenced his action against *J. D. Havens*, and in his petition alleged as follows:

"That he is the owner of and in the possession of the following-described real estate, situated in Bourbon county, Kansas, to wit: Lot No. 9, in block No. 103, in the city of Fort Scott. The plaintiff further states that the defendant claims an interest in said real estate adverse to the plaintiff's, the exact nature of which claim of the defendant is not known to the plaintiff, but the plaintiff alleges that the claim of defendant, whatever it may be, is subordinate and inferior to that of the plaintiff.

"Wherefore, plaintiff prays that the said pretended interest of defendant in said real estate may be determined, and the same be declared invalid and of no force and effect as against the estate, interest and ownership of the plaintiff therein."

Havens filed an answer, admitting that Drake was in possession of the property, but alleged that he was the owner of an undivided one-half interest therein, as the grantee of John E. Himoe, the sole heir of John E. Himoe, deceased, who, he alleged, prior to his death was a joint owner with one A. P. Clark of the lot. Upon her application, Mrs. Hattie Ida Cheney was made a party defendant, and filed an answer, claiming an undivided three-sixteenths of the lot, as the surviving heir of her mother, Ida M. Anderson, who, prior to her death, had been the wife of John E. Himoe sr. She afterward intermarried with R. C. Anderson. Upon the trial, at the September term, 1887, the court rendered the following judgment:

"This day this cause came on for hearing. The plaintiff, C. F. Drake, appeared by his attorneys, J. D. McCleverty and A. A. Harris; the defendant J. D. Havens appeared by E. M. Hulett, his attorney; the defendant Hattie Ida Cheney appeared by her attorneys, W. W. Martin and P. J. Coston,

and thereupon the court proceeded to hear the cause, and after having heard all the evidence and the arguments of counsel, and being fully advised in the premises, doth find the issues in favor of the plaintiff and against both of the defendants, and doth find that the plaintiff is entitled to have his title quieted to the real estate mentioned in the pleadings, to wit: Lot No. 9, in block No. 103, in the city of Fort Scott, Bourbon county, Kansas, as against any claim, title or interest therein of the defendants or either of them, and that the defendants or either of them are not entitled to have said real estate partitioned between them and the plaintiff. Wherefore, it is considered, ordered and adjudged that the title of said real estate, hereinbefore mentioned, be quieted in the plaintiff, and that he hold, occupy and possess the same free and clear of any claim, title or interest of the defendants therein, or either of them; and that the defendants, nor either of them, do not have any partitions of said real estate against the plaintiff. It is further considered, ordered and adjudged that the sheriff of this county make a deed to the said real estate to the plaintiff, and that the plaintiff recover of the defendants his costs herein expended, for which execution may issue. And to each finding of fact and conclusion of law, and to the judgment, the defendants each excepted."

The defendants bring the case here.

E. M. Hulett, for plaintiff in error Havens; W. W. Martin, and P. J. Coston, for plaintiff in error Cheney.

A. A. Harris, and Henry E. Harris, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below, instituted by C. F. Drake against J. D. Havens, to quiet title to lot No. 9, in block No. 103, in the city of Fort Scott. Subsequently, upon her own application, Hattie Ida Cheney was made a defendant. C. F. Drake alleged in his petition that he was the owner of and in the possession of the lot described in his petition. J. D. Havens answered that he was the owner of an undivided one-half of the lot, as the grantee of John E. Himoe, the heir of John E. Himoe sr., deceased. Hattie Ida Cheney answered that she was the owner of an

undivided three-sixteenths of the lot, as the heir of her mother, Ida Anderson, formerly the widow of John E. Himoe sr., deceased. The court made a general finding in favor of C. F. Drake, and granted the prayer of his petition. The defendants below bring this case to this court.

Drake has been, for some years, in possession of the lot, and has made lasting and valuable improvements thereon, of the value of $6,000. The answers admitted Drake's possession. Prior to 1864, John E. Himoe sr. and A. P. Clark were the joint owners of the lot. Sometime in 1864 Himoe died, leaving his widow, Ida Himoe, and John Himoe, an infant, his only heirs. On July 28, 1866, A. P. Clark commenced proceedings against Ida Himoe and John Himoe, infant, for partition of the lot in controversy, and also lot 11, in block 103. On the day that A. P. Clark filed his petition for partition, the clerk of the court issued a notice to the defendants, Ida Himoe and her infant child, John Himoe, setting forth the substance of the petition. This was directed to the sheriff. The sheriff's return of service upon the notice is as follows:

"Received July 28, 1866, and on the 4th day of August, 1866, I served this notice by delivering to Ida Himoe a copy of the same duly certified, with all the indorsements thereon, and on John Himoe, infant, by delivering to Ida Himoe in the presence of the infant, John Himoe, a duly-certified copy of this notice, and also a duly-certified copy to Ida Himoe, as natural guardian of the said John Himoe, infant, all in Bourbon county, Kansas.

Fees: Service..........$1.25　　D. C. KNOWLES, *Sheriff.*
　　　Travel 28 miles .. 2.80　　By C. S. WHEATON, *Deputy.*"
　　　　　　　　　 $4.05

This was filed in the court by the clerk on August 6, 1866. W. W. Martin was appointed by the court guardian *ad litem* for John Himoe, infant. On the 1st day of the October term of the court for 1866, judgment was rendered for the plaintiff, and partition ordered as prayed for. On the 4th day of October, 1866, the commissioners appointed to divide the property reported it was impracticable to do so, and returned its

appraised valuation at $700. On the 11th day of October, 1866, the court rendered judgment decreeing the fee-simple title in lots 9 and 11 to A. P. Clark, he having elected to take the property at its appraised value. The court further ordered that Clark pay to Ida Himoe and to the guardian of John Himoe, infant, $175 each, as their proportion of the appraised value of the lots. The costs were divided.

If the judgment in the partition action of A. P. Clark divested the defendants of all title to the lot in controversy, it is conceded that the judgment of the district court in this case must be affirmed, but the defendants contest the validity of the proceedings in that case. The errors complained of are as follows: First, the admission in evidence of the record in the case of partition of A. P. Clark v. Ida Himoe and John Himoe; and second, the admission of the deposition of Clark, in which he testified he paid Ida Himoe and R. C. Anderson, guardian of John Himoe, infant, their proportion of the appraised value of the lots described in the partition action. The contention is that under the provisions of chapter 162, Comp. Laws of 1862, Clark should have presented his petition to the district court of Bourbon county in term-time, and that the service of notice was insufficient because the defendants had only thirty-eight days in which to plead, and therefore that the court had no jurisdiction of the subject-matter or the parties; and further, it is contended that there was no service upon John Himoe, infant, and for that reason all the proceedings are void. The portion of the statute relating to the filing of the petition and the giving of notice was as follows:

"SEC. 2. That any person or persons entitled to partition of his, her or their estate or estates, under this act, may file his, her or their petition in the district court, praying that partition of such estate or estates may be made, which petition shall set forth the nature of the title of the demandant, the tract or tracts of land, the tenements or hereditaments of which partition is demanded, and also the name or names and place of residence of each joint tenant, coparcener or tenant in common, with such demandant, if they shall be known to

such demandant; and if, on examination, it shall appear to the court that the demandant hath a legal right to any part of such estate or estates, the court shall proceed, in the term in which such petition may be filed, to order a partition to be made in the manner prescribed by the provisions of this act.

"SEC. 3. That the demandant in any petition shall give notice, in some newspaper in general circulation in each county where the land lies, or shall give personal notice, in writing, to each and every person concerned, their agent or attorney, at least forty days previously to the term of the court next after the filing his petition, setting forth the pendency and demand thereof.

"SEC. 4. That, whenever it shall appear to the court that due notice hath been given as aforesaid, and no sufficient reason shall appear why partition should not be made, the court shall proceed to order the partition in favor of such demandant, or all parties in interest, and shall issue their writ, directed to the sheriff of their county; or, in case the estate or estates of which partition is sought shall be situate in more than one county, then to the sheriff of either of the counties in which the estates may be, commanding him, that, by the oaths of three judicious and disinterested freeholders of the vicinity, to be named by said court, he cause to be set off and divided to the demandant, or each party in interest in said petition, such part and proportion of such estate or estates as the court shall have ordered."

In view of the provisions of these sections, the partition proceedings are not void because of the failure to file the petition during term-time, or for insufficient notice. While the statute provides that "The court shall proceed in the term in which such petition may be filed to order partition," and also refers to the filing of the petition in the court, yet, as § 3 requires that notice shall be given "at least forty days previously to the term of the court next after the filing of the petition," it is clear that if a petition is filed in vacation, and notice is given thereof, as required by § 3, the court has jurisdiction both of the subject-matter and of the parties to the action.

1. Partition—
statute—
jurisdiction.

The petition was filed July 28, 1866, more than forty days before the convening of the October term of the court for 1866,

at which the decree was entered. Service was made on the 4th day of August, 1866. The court had the petition before it at the time of the judgment, and even if the defendants should have been given forty days to answer, instead of thirty-eight, this, at most, is a voidable defect. It is not a defect that makes the judgment void. Judgment was not rendered until more than forty days after service upon the defendants. (*Dutton v. Hobson*, 7 Kas. 196; *Armstrong v. Grant*, 7 id. 285; *Simcock v. National Bank*, 14 id. 529.)

2. Defective notice—judgment, not void.

As to the service made upon John Himoe, infant, it appears that at the date of such service he was only two years of age. The boy's father was dead, and his mother was his natural custodian and guardian. Two duly-certified copies were delivered to the mother by the sheriff in the presence of the infant. One copy was for John Himoe, the infant, and the other copy was for Ida Himoe, as his natural guardian. Section 3 of chapter 162 provided that personal notice, in writing, should be given "to each and every person concerned, their agent or attorney." Section 14 of chapter 162 further provided:

"That the guardian or guardians of any minor heir or heirs shall be empowered, on behalf of their ward or wards, to do and perform any act, matter or thing respecting the partition of any estate or estates under this act, and to elect, on behalf of such ward or wards, to take said estate or estates, when the same cannot be divided without injury, as mentioned in the eighth section of this act, and make payments therefor on behalf of said ward or wards; and such acts and things, done by said guardian or guardians, shall be as valid in law as if the same had been done by such ward or wards after his, her or their arrival at full age."

The service upon John Himoe, infant, as stated, was followed up by the appointment in the court of a guardian *ad litem* for him. The appearance docket also shows that the duly appointed and qualified guardian of John Himoe, on February 15, 1868, paid to the clerk of the district court $4.05 as Himoe's share of the costs in the case.

Clearly nothing more could have been done than was done to bring to John Himoe's notice the commencement of the action, or to more fully protect his rights and interests in the property.    Rights of majority were conferred on John Himoe January 19, 1882.    This action was commenced August 20, 1886, and Havens, who claims as grantee of John Himoe, filed his answer September 27, 1886.    More than two years had expired after John Himoe had the rights of majority con-

3. Infant—notice —valid judgment.

ferred upon him, before the alleged title of Havens was presented in the court.    Under these circumstances, we must hold that the judgment in the partition action, as to John Himoe, cannot now be attacked as void for want of service. (*Robb v. Lessees of Irwin*, 15 Ohio, 699; *Delashmutt v. Parrent*, 39 Kas. 548.)

It is immaterial whether the deposition of Clark was competent as testimony or not.    The deposition tended to prove that Ida Himoe and the guardian of John Himoe were paid their portion of the appraised value of the lots in accordance with the judgment.    The judgment, as rendered, gave to A. P. Clark the fee-simple title of lot nine.    If in this form it was irregular, it certainly was not void.    The court had jurisdiction of the subject-matter and of the parties, and as that judgment is not here for review or reversal, for all the purposes of this case it must be considered valid and binding.    After the judgment of the 11th of October, 1866, Ida Himoe, afterward Ida Anderson, had no title to the lot in controversy. As Mrs. Cheney, the daughter of Mrs. Himoe, was not born until 1869, of course she cannot claim any title or interest in the property.

The point made that no title passed to Clark, because the sheriff had not made him a deed, is not tenable.    He certainly obtained the equitable title to the property by the judgment, if nothing more. (*Head v. Daniels*, 38 Kas. 1.)

The court committed no error in admitting as testimony the record in the case of Clark *v.* Ida Himoe *et al.*, and in rendering judgment for the plaintiff below.

The judgment of the district court will be affirmed.

JOHNSTON, J., concurring.

VALENTINE, J., not sitting nor taking any part in the decision.

*Per Curiam:* Under the authority of the case of *Havens v. Drake*, just decided, the judgment of the Bourbon district court in CHENEY V. RICHARDS, No. 5223, will be affirmed.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE, J., not sitting, nor taking any part in the decision.